UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 26-1345 JGB (MARx)** | Date | March 27, 2026 |
|---|---|---|---|
| Title | ***Y.X. v. Kristi Noem, et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None | None |

**Proceedings:     Order: (1) GRANTING Petitioner's Ex Parte Application for a
Temporary Restraining Order (Dkt. No. 3) (IN CHAMBERS)**

Before the Court is Petitioner Y.X.'s ex parte application for a temporary restraining
order.  ("Application," Dkt. No. 3.)  The Court finds this matter appropriate for resolution
without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in relation
to the Application, the Court **GRANTS** the Application.

## I.   BACKGROUND

On March 22, 2026, Petitioner X.Y. ("Petitioner") filed a petition for writ of habeas
corpus. (Dkt. No. 1.)  The same day, Petitioner filed the instant Application.  (Application.)
After the Court identified discrepancies between the initial petition and the Application,
Petitioner filed a first amended petition on March 26, 2026.  ("Petition," Dkt. No. 12.)  The
Petition raises the following grounds for relief: (1) violation of the Fifth Amendment Due Process
Clause; (2) no adequate alternative remedy; and (3) violation of the Administrative Procedure
Act ("APA"), 5 U.S.C. § 706.  (See Petition.)  Petitioner's Application is supported by various
documents explaining his immigration status and detention.  (Application, Exs. A, B.)

On March 23, 2026, the Court ordered the Government to respond by March 24, 2026, at
2:00 p.m.  (Dkt. No. 8.)  The Government responded on March 24, 2026, indicating that the
Government had no response to Petitioner's Application.  ("Response," Dkt. No. 10.)

---

## II.  FACTS

Petitioner is a citizen of China.  (Petition ¶ 30.)  He entered the United States on April 23, 2023, near Roma, Texas.  (Id.)  After he arrived Petitioner expressed fear of returning to China and sought protection in the United States.  (Id.)  On April 13, 2023, the Department of Homeland Security ("DHS") initiated removal proceedings against Petitioner.  (Id.)  DHS issued a Notice to Appear and placed Petitioner in removal proceedings.  (Id.)

In July 2023, Petitioner filed an application for asylum and related protection on Form I-589.  (Id. ¶ 31.)  Petitioner's case remains pending before an Immigration Judge.  (Id.)

From 2023 through early 2026, Petitioner continued to appear as required at check-ins with Immigration and Customs Enforcement ("ICE").[1]  (Id. ¶ 32.)  The form acknowledging receipt of Petitioner's asylum application plainly states that he "may remain in the U.S. until [his] asylum application is decided."  (Application, Ex. B.)  Petitioner's Immigration Court Master Calendar Hearing is scheduled for March 30, 2026, at 8:30 a.m. before Immigration Judge Matthew Chan.  (Petition ¶ 32.)

On March 18, 2026, Petitioner reported for an ICE check-in and was taken into custody.  (Id. ¶ 33.)  Petitioner has not received a bond hearing or other individualized custody review.  (Id. ¶ 34.)

## III. LEGAL STANDARD

A temporary restraining order ("TRO") may be issued upon a showing that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 61(b)(1)(A).  The purpose of a TRO is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction.  See Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006).  The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. Lockheed Missile & Space Co. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right."  Munaf v. Geren, 553 U.S. 674, 690 (2008) (citations omitted).  An injunction is binding only on parties to the action, their

---

[1] The Court views this assertion as invariably indicating that Petitioner is on some form of ICE-sanctioned release instituted in 2023, most likely an order of own recognizance.  The Court **ADMONISHES** Petitioner's Counsel that it is substantially more helpful to the Court for Counsel to identify the specific form of release applying to his clients when filing such petitions.

officers, agents, servants, employees, attorneys, and those "in active concert or participation"
with them.  Fed. R. Civ. P. 65(d).

Courts in the Ninth Circuit may consider the Winter factors on a sliding scale and grant
an injunction where the plaintiff raises "serious questions going to the merits, and a balance of
hardships that tips sharply toward the plaintiff" if "the plaintiff also shows that there is a
likelihood of irreparable injury and that the injunction is in the public interest."  All. for the Wild
Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (noting that the latter two elements are
"the other two elements of the Winter test").

## IV.  DISCUSSION

To secure a TRO or a preliminary injunction, Petitioner must show that he is likely to
succeed on the merits, likely to suffer irreparable harm, and that the balance of equities and the
public interest tips in his favor.  Winter, 555 U.S. at 20.  Likelihood of success on the merits "is a
threshold inquiry and is the most important factor."  Env't Prot. Info. Ctr. v. Carlson, 968 F.3d
985, 989 (9th Cir. 2020).  Because both parties have had an opportunity to file briefs, the Court
construes the Application for a TRO as a motion for preliminary injunction.  Synopsys, Inc. v.
AzurEngine Techs., Inc., 401 F. Supp. 3d 1068, 1075 (S.D. Cal. 2019) ("Given this opportunity
for briefing, the Court will instead construe [plaintiff's] request for a TRO as a motion for
preliminary injunction.").

## A.    Likelihood of Success on the Merits

"Likelihood of success on the merits is a threshold inquiry and is the most important
factor."  Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020).  Petitioner argues
that his detention violates his Fifth Amendment due process rights.  (Petition at 9-10;
Application at 4.)  "Freedom from imprisonment . . . lies at the heart of the liberty" that the
Fifth Amendment's Due Process Clause "protects."  Zadvydas v. Davis, 533 U.S. 678, 690
(2001).

"[T]he Due Process Clause applies to all 'persons' within the United States, including
aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Id. at 693.  As
a result, the government can only detain individuals outside of the criminal context in "certain
special and 'narrow' nonpunitive 'circumstances.'"  Id. at 690 (citing Foucha v. Louisiana, 504
U.S. 71, 80 (1992)).

The Supreme Court has recognized that an individual on parole, which is analogous to
release on own recognizance or whatever form of sanctioned release Petitioner has obtained, has
a liberty interest under the Fourteenth Amendment's Due Process Clause requiring "some
informal procedural guarantees."  Morrissey v. Brewer, 408 U.S. 471, 482-83 (1972); see also
Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (extending Morrissey to probation revocation);
Young v. Harper, 520 U.S. 143, 145 (1997) (extending Morrissey to Oklahoma's preparole
program because it is also "a kind of parole").  This liberty interest exists even though a

revocation of parole arises outside of the protections of criminal proceedings. Morrissey, 408 U.S. at 480. "[T]he loss of liberty entailed is a serious deprivation requiring that the parolee be accorded due process." Gagnon, 411 U.S. at 781. Further emphasizing that this liberty interest does not arise exclusively in the criminal context, the Supreme Court compared the right guaranteed to parolees to a "preliminary hearing" to that guaranteed to welfare recipients prior to the termination of their benefits. Morrissey, 408 U.S. at 485 (citing Goldberg v. Kelly, 397 U.S. 254, 267-271 (1970)). Although the Due Process Clauses of the Fifth and Fourteenth Amendments cannot always be read uniformly, see Fuld v. Palestine Liberation Org., 606 U.S. 1, 13 (2025), the Court is convinced that the liberty interest protecting parolees from revocation without a hearing applies with equal force to noncitizens released on their own recognizance. See J.O.L.R., Petitioner, v. Minga Wofford, Mesa Verde ICE Processing Ctr. Facility Administrator, No. 1:25-CV-01241-KES-SKO (HC), 2025 WL 2908740, at *5 (E.D. Cal. Oct. 14, 2025) ("The Court finds that petitioner has a protected liberty interest in his release."); Rodriguez Diaz v. Garland, 53 F.4th 1189, 1205 (9th Cir. 2022) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

Most importantly, the Court notes that the Government has offered no arguments in opposition to Petitioner's Application. Thus, between lack of opposition and the facts as pled, the Court finds that under the Fifth Amendment's Due Process Clause, Petitioner has a liberty interest in due process protections prior to re-detention following a grant of release on own recognizance or whatever other conditions of release Petitioner is under.

The Court now turns to the question of what procedures are appropriate to protect Petitioner's liberty interest. Under Mathews v. Eldridge, the Court considers three factors:[2] "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Under the first factor, courts have regularly described a petitioner's interest in remaining out of custody as "substantial." Diaz v. Kaiser, No. 3:25-CV-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025). The weight of the factor increases as a party remains on bond for an extended period. Morrissey, 408 U.S. at 482. Here, Petitioner received his release on own recognizance or some other conditions of release in 2023. (Petition ¶ 26.) Thus, DHS released Petitioner on some conditions for least two years. Petitioner's interest is significant.

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is high, with no process offered to Petitioner during his re-detention. (Application.) The

---

[2] The Court follows the Ninth Circuit, which regularly employs Mathews v. Eldridge in the context of due process challenges in the immigration context. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022).

**CIVIL MINUTES—GENERAL**   Initials of Deputy Clerk mg

risk of erroneous deprivation is heightened in the context of civil immigration detention, which must be "nonpunitive in purpose." <u>Zadyvdas</u>, 533 U.S. at 690.

As to the third factor, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." <u>Hernandez v. Sessions</u>, 872 F.3d 976, 994 (9th Cir. 2017). The Government's previous decision to release Petitioner demonstrates that the Government found that Petitioner was not a danger to the community and that his presence in future immigration proceedings could be "ensured by . . . alternative conditions." <u>Id.</u>

Accordingly, the Court concludes that Petitioner has demonstrated a likelihood of success on the merits.

## B.      Irreparable harm

Petitioner is suffering irreparable harm because Petitioner is likely being detained in violation of his constitutional rights. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" <u>Hernandez v. Sessions</u>, 872 F.3d 976, 994 (9th Cir. 2017) (quoting <u>Melendres v. Arpaio</u>, 695 F.3d 990, 1002 (9th Cir. 2012)).

Furthermore, as the Ninth Circuit has explained, "immigration detention" results in "subpar medical and psychiatric care . . . , [] economic burdens . . . on detainees and their families . . . , and [] collateral harms to children of detainees." <u>Hernandez</u>, 872 F.3d 976, 995 (9th Cir. 2017). Therefore, Petitioner faces irreparable harm.

## C.      Balance of equities and public interest

Where the government is the opposing party, the balancing of the equities and the public interest merge. <u>See</u> <u>Nken v. Holder</u>, 556 U.S. 418, 435 (2009). Thus, the Court asks whether any significant "public consequences" would result from issuing the preliminary injunction. <u>Winter</u>, 555 U.S. at 24.

As other courts have recognized, "the public has a strong interest in upholding procedural protections against unlawful detention." <u>Vargas v. Jennings</u>, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). And the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." <u>Zepeda v. U.S. Immigr. & Nat. Serv.</u>, 753 F.2d 719, 727 (9th Cir. 1983). Likewise, in the absence of an injunction, Petitioner is and will continue to experience prolonged detention and the resulting emotional harm. Therefore, the Court finds that the only reasonable relief is Petitioner's release.

Due to the minimal harm suffered by the Government, the Court will not require security.

## V.    CONCLUSION

For the reasons described above, the Court **GRANTS** the Application.  Accordingly, the Court finds Petitioner is entitled to a preliminary injunction and **ORDERS** the Government to release Petitioner from its custody immediately.

**IT IS SO ORDERED.**